*Court of Common Pleas, Dauphin County, December 24th,* 1860.

### The Commonwealth of Pennsylvania v. The Girard Bank.

When a charter was given by the legislature to a corporation, exempting it from taxation for a certain time, in consideration of a sum of money paid into the State treasury, such company is relieved from the payment of State taxes, although the governor, at the time of signing the bill, considered that it was not exempted, and the president of the company wrote to him, after he had signed it, that the corporation tax would still be paid by it. Such a charter will not relieve the corporation from taxes due and unpaid at time of granting it.

By the Court.—On March 19th, 1836, the charter of the Girard Bank, in the city of Philadelphia, was extended for a period of twenty years, and its capital stock increased to five millions of dollars, in consideration of a bonus of $250,000 paid into the State treasury.   On May 25th, 1853, an act was passed again extending the charter for twenty years from the expiration of the former charter, and a bonus required therefor of $125,000. After the bill had passed the legislature, and before it was signed by the governor, that officer addressed a letter to the attorney-general of the commonwealth, dated May 20th, 1853, asking for a construction of the bill and the effect thereof on the tax of the corporation, should it become a law by his signature.   And on May 16th, 1853, the opinion of the attorney-general was sent in

[The Commonwealth of 'Pennsylvania *v.* The Girard Bank.]

reply, expressing the belief that the corporation would still be liable to a tax on its capital stock under section 46 of the act of 16th April, 1850. On May 24th, the governor appears to have inclosed the opinion of the attorney-general to the president of the bank, stating his belief that such would be the true construction of the law, and asking, if he signed the bill, whether he could have an assurance that the *corporation* tax would still be paid. Before receiving a reply, to wit, on May 25th, he signed the bill.

On June 6th, the president of the bank assured the governor by letter that he would carry out the propositions contained in his letter of May 24th. This correspondence is followed by a meeting of the directors and stockholders of the bank, pursuant to a regular call. The opinion of the attorney-general, as also that of Benjamin Champneys, Esq., appears to have been laid before them, and by a vote the corporation accepted the charter as construed by Judge Champneys, and duly communicated the resolution of acceptance to the State department by papers filed therein on August 1st, 1853. All of this correspondence and documents, together with the opinions of the two gentlemen of the law, were given in evidence by the plaintiff, under objection by the defendant, with the understanding, however, that when received, the court was to decide on the validity thereof, and whether the same should have any effect in the determination of the cause. It is very clear that neither the opinion of the attorney-general, as furnished to the governor, nor of the latter officer at the time of signing the bill can have any weight with this court in giving an interpretation to the statute. And the promise of the president of the bank is of no more validity, for, independent of his having no authority to make a contract for the corporation, the bill was signed and had become a law before his letter was written, and, therefore, would not have influenced the governor in giving it his sanction. Besides, acts of Assembly must be construed according to their words and meaning, and not according to the interpretation given by one branch alone of the law-making power. Laws are not in the nature of contracts in this particular; are not bargains between individuals, but commands proceeding from the legislature. This act of Assembly is not to be interpreted either by the views of the governor when he signed the bill, or those of the company when it accepted of its provisions. The whole case presents for our consideration a single question: Is the bank exempt from taxation immediately on accepting the provisions of the act, or only during the twenty years to which its charter is extended? A portion of the amount charged against the corporation by the department is on account of arrears of taxes due prior to May 25th, 1853, to which, as we conceive, there can be no possible objection, as it cannot be pretended that the law was intended to be an exemption from past

indebtedness. The department did not attempt to charge the bank with taxes under section forty-six of the act of 1850, and had it done so, there would have been no shadow of foundation for the claim. That section was repealed in 1852, and the thirty-third section of the act of 1844 substituted in its stead. There was no pretence to revive section forty-six, either by the act of 1853, extending the charter of the Girard Bank, or by any other law. It had ceased to be any portion of the act; and what makes the intention still more clear, this institution was in terms exempted from the burdens imposed on its capital stock. We do not think that there is the least plausibility in that part of the attorney-general's opinion. The bank was required to pay into the State treasury $125,000 immediately, if the State treasurer should so direct, as a bonus for the renewal of its charter for twenty years from the expiration of its then present charter, and for the sum thus paid was to be " free from any tax or other charge whatever, until the expiration of this extended charter."

The first part of the statute extends the charter for the period of twenty years from the expiration of the present charter, subject to · the provisions, restrictions, and conditions, and with all . the rights, privileges, and immunities mentioned and contained in the act of 16th April, 1850, except the twenty-first section, which imposes a tax on dividends, and section thirty-three of the act of 1844, taxing the capital stock. This bank is clearly relieved from any taxation during the twenty years of its newly-granted existence, and it will transcend the power of the legislature to impose any tax on it during that time. It is exempted for a valuable consideration, and the grant is binding on the State as a contract (3 Howard, 133). Even land may be thus exempted for a consideration paid, and the right to tax cannot be resumed (7 Cranch, 164).

Although the power to exempt property or franchises from taxation for a full consideration paid has been questioned by the Supreme Court of this State, yet we apprehend that the above-cited authorities are binding on our legislature and judiciary, and will continue so to be whilst the Constitution of the United States is recognized as the supreme law of the land. How long that will last, it is impossible for human prescience to foretell. But whilst we insist on the binding obligation of a contract to relieve a party from taxation, yet it never ought to be presumed without clear words to that effect. The whole community is interested not only in retaining the right, but also in securing the equality of its imposition; and where certain specific taxes are imposed, those who contend for the exoneration, either present or prospective, should show that they have been relieved from the burden by clear words or necessary implication (4 Peters, 514; 10 Barr, 450). In the present law we can see a clear agreement to

exempt the Girard Bank from any taxes during the term of twenty years added to its charter, yet we can find nothing showing an intention to release the taxes to which, in common with nearly all the other banks in the State, it was subject until that period had commenced. The payment of a bonus was for exemption during the new, not the old charter. The amount was obviously insufficient remuneration to the State for the taxes of twenty-three years, and to judge from the past, could only have been received for the twenty years because paid in advance to an embarrassed treasury. We leave out of view the contemporaneous construction put on this statute both by the officers of the bank and of the government, as manifested by the annual payment of the taxes during the whole period for which they are now claimed; but we are of the opinion that the law was properly construed, and that the legislature never intended to relieve the bank from arrears of taxes then due, or grant it any immunity until the commencement of its new charter. Therefore we direct a verdict to be rendered in favor of the commonwealth for the sum of $8146.76.

*Knox, for plaintiff.*

*Kunkel, for defendant.*